■ In the Matter of the Claim of VADIM TAKSER, Respondent. NEW YORK COMPENSATION INSURANCE RATING BOARD, Appellant; COMMISSIONER OF LABOR, Respondent. [882 NYS2d 349]—

Appeal from a decision of the Unemployment Insurance Appeal Board, filed March 27, 2008, which ruled that claimant was eligible to receive unemployment insurance benefits.

While claimant was employed as an actuarial analyst, his employer received a letter dated August 30, 2006 that contained three checks—dated October 29, 2004, November 8, 2004 and November 28, 2004—each of which had been made payable to the employer. The checks in question had been sent to the employer from financial institutions representing interest payments owed to the employer and, apparently, had been misappropriated from the employer's place of business some time in late 2004. The author of the letter stated that, upon taking up residence in claimant's former apartment, she found the three checks and had been trying to return the checks to claimant, but could not locate him. Each check was endorsed with what is purported to be claimant's signature and his personal bank account number. None of the checks had been negotiated, and claimant denied taking them or endorsing them with his signature. Concluding that claimant had misappropriated the checks and intended to convert them, the employer terminated him. Claimant subsequently applied for unemployment insurance benefits and the Department of Labor initially found that claimant was entitled to benefits. An Administrative Law Judge found, however, that claimant was disqualified from receiving benefits because he lost his employment through misconduct. The Unemployment Insurance Appeal Board reversed that decision and a new hearing was held. A second Administrative Law Judge concluded that claimant was disqualified from receiving benefits. Upon its review, the Board determined that claimant's "discharge cannot be said to have been due to misconduct" and found that claimant was entitled to receive benefits, prompting this appeal by the employer.

Surely, the question of "whether a claimant has engaged in disqualifying misconduct presents a factual issue for the Board to resolve and its decision will be upheld if supported by substantial evidence" (*Matter of Williams [City of New York—Commissioner of Labor]*, 47 AD3d 994, 994 [2008]; *see Matter of Kuryla [Finger Lakes Community Coll.—Commissioner of Labor]*, 45 AD3d 1129, 1130 [2007]). Moreover, it is within the

province of the Board to resolve credibility determinations in reaching that factual determination (*see Matter of Powers [L. Schieffelin & Co., LLC—Commissioner of Labor]*, 42 AD3d 610, 611 [2007]; *Matter of Tobin [Commissioner of Labor]*, 20 AD3d 839, 839 [2005]). Here, however, the record as a whole does not support the Board's conclusion that "[t]here is no evidence, other than the employer's unsubstantiated suspicions, that the claimant misappropriated the three checks." Therefore, we must reverse.

It is undisputed that the three checks—all of which were issued almost two years before the employer had received them with the letter—bore what appeared to be claimant's signature as well as his personal bank account numbers. In fact, claimant, when initially confronted with the checks, conceded that he had formerly resided in the apartment where the checks had apparently been found, that the numbers on each check were for his personal bank account and that each appeared to be endorsed with his signature. In response, claimant gave an explanation that, on its face, is not plausible. He suggested, without presenting any evidence, that other employees had taken the checks, endorsed them with what appeared to be his signature and personal bank account numbers and did so in retaliation for claimant having filed workplace complaints against them. However, this explanation failed to account for the fact that the checks had been misappropriated in late 2004, prior to any workplace complaints having been filed by claimant against any of these employees. If true, the claims that these employees were responsible for the checks being misappropriated and subsequently sent to the employer would have involved the employees misappropriating these checks long before any dispute existed between them and claimant and holding the checks for a prolonged period of time, during which they forged his signature and obtained the numbers of his personal bank account, which they then placed on the back of each check. Finally, these employees would also have had to obtain the name, as well as the cooperation, of the tenant who took possession of claimant's apartment in 2006 and wrote the letter claiming to have found the checks in question upon obtaining her tenancy. This explanation, when viewed against the uncontroverted evidence introduced at the hearing, provides ample justification for the employer's conclusion that claimant had misappropriated these checks and, at some point while they were in his possession, intended to negotiate them. While the Board is obviously free to give appropriate consideration to the evidence that has been presented to it, it cannot, as it appears to have done here, disregard compelling evidence that claimant was guilty of employee misconduct.

As a result, we must reverse and remit for a new hearing and decision before the Board.

Cardona, P.J., Peters, Rose, Kavanagh and McCarthy, JJ., concur. Ordered that the decision is reversed, on the law, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.